UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| JOSEPH M. GAST, | ) |  |
|---|---|---|
| *Plaintiff*, | ) | |
| v. | ) | Case No. 4:10-cv-45 |
| TENNESSEE VALLEY AUTHORITY, | ) | Judge Mattice |
| *Defendant*. | ) | |

## MEMORANDUM AND ORDER

Before the Court is a Motion to Dismiss [Court Doc. 19] filed by Defendant Tennessee Valley Authority. Defendant asserts that Plaintiff's claims fail as a matter of law and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Defendant's actions are discretionary and non-reviewable, and Plaintiff can allege no set of facts which would entitle him to relief.

For the reasons outlined below, Defendant's Motion to Dismiss [Court Doc. 19] will be **GRANTED**.

**I.    FACTS AND PROCEDURAL HISTORY**

Plaintiff Joseph M. Gast filed this action against Defendant on June 24, 2010 and included a request for a Temporary Restraining Order ("TRO") in his Complaint. (Court Doc. 1, Compl.) Plaintiff alleged in the Complaint that he had constructed a two-step boat dock which was permanently moored on Lot 47 in May 2008 and cost over $35,000. (*Id.* ¶¶ 24-25.) In January 2009, Plaintiff received a letter from Defendant which stated that Plaintiff had previously been informed that his dock was illegal and demanded removal of the dock. (*Id.* ¶ 26.) Plaintiff and Defendant thereafter engaged in discussions concerning

Plaintiff's dock and its removal. (*Id.* ¶ 27.) Plaintiff's and Defendant's discussions proved unfruitful, and on May 27, 2010, Defendant sent Plaintiff another letter which demanded voluntary removal by the Plaintiff or removal by the Defendant at Plaintiff's expense by June 27, 2010. (*Id.* ¶ 30.)

In the Complaint, Plaintiff represented that Defendant was selectively enforcing the provisions of the Tims Ford Reservoir Land Management and Disposition Plan, such that his dock should have been allowed, and a community dock application for Plaintiff's Zone pending before Defendant should have been approved. (*Id.* ¶¶ 21, 28-29, 31-34.) Plaintiff further alleged in the Complaint that removal of the dock would cause him substantial damage, while permitting the dock to stay would result in no harm, as it had already been in place for two years. (*Id.* ¶¶ 35-36.) Plaintiff asserted three claims against Defendant and requested the Court enter an Order temporarily restraining Defendant from removing his dock by force. (*Id.* ¶¶ 37-47.)

The Court held a hearing on Plaintiff's request for injunctive relief on June 25, 2010. (Court Doc. 3.) Before the hearing, Defendant filed a Brief in response to Plaintiff's TRO request. (Court Doc. 5.) At the hearing, Defendant agreed not to remove Plaintiff's dock for one week, and the Court scheduled a preliminary injunction hearing to take place on July 1, 2010. (Court Doc. 8.) Before that hearing, however, the parties came to an agreement with regard to the dock, and the Court eventually entered two agreed orders which required Plaintiff to remove the dock before July 18, 2010. (Court Docs. 12 & 16.) Plaintiff removed the dock as was required pursuant to the agreed order.

Defendant filed the instant Motion to Dismiss on August 26, 2010. (Court Doc. 19.)

## II.　STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides an affirmative defense for a party's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This defense arises in the context of a motion to dismiss, where the movant challenges the sufficiency of claims set forth in a complaint. In *Ashcroft v. Iqbal*, the Supreme Court of the United States expanded on the holding in *Bell Atl. Corp. v. Twombly* by stating that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court clarified this statement by outlining the two "working principles" governing a motion to dismiss. *Id*. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Instead, a court considering a motion to dismiss should only accept that all factual allegations are true. Accordingly, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.

The second principle outlined in *Iqbal* is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). The reviewing court must determine not whether the plaintiff will ultimately prevail but whether there is "more than the mere possibility of misconduct," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Therefore, to survive a motion to dismiss

under 12(b)(6), plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

Defendant alleges that, in the absence of the need for injunctive relief, Plaintiff's remaining claims fail as a matter of law. The three claims asserted in the Complaint read as follows:

> 38. The actions of the Defendant, TVA, in creating and implementing a permitting procedure and policy which it has failed to enforce and abide by has resulted in an application pending in excess of five (5) years without final action is a violation of Joseph M. Gast's constitutional rights, including, but not limited to, the right to Equal Protection.
>
> . . .
>
> 40. The actions of the Defendant, TVA, in creating and implementing a permitting procedure and policy which it has failed to enforce and abide by has resulted in an application pending in excess of five (5) years without final action is arbitrary and capricious, contrary to law, contrary to procedures established by 40 CFR 1502.9, and an abuse of discretion as a public agency in the management of public hands.
>
> . . .
>
> 42. The actions of Defendant, TVA, in selective reinforcement [sic], selective alteration, and implementation of its Zone 8 restrictions and requirements have been arbitrary and capricious, contrary to law, contrary to procedures established by 40 CFR 1502.9, and an abuse of discretion as a public agency in the management of public lands.

(Comp. ¶¶ 38, 40, 42.)

In response to these claims, Defendant asserts two basic arguments. First, Defendant argues that Plaintiff's Equal Protection claim fails because it is a "class of one" claim and because Defendant's discretionary actions are not an appropriate subject for such a claim. (Court Doc. 20, Br. in Supp. of Tennessee Valley Authority's Mot. to Dismiss at 6-7.) Alternatively, Defendant argues that the Equal Protection claim fails because Plaintiff did not adequately plead a "class of one" claim by showing that Defendant's decision lacked a rational basis or that Plaintiff was "similarly situated" to other individuals. (*Id.* at 10.)

Second, Defendant argues that Plaintiff's claims as to the community dock application must fail because there is no allegation that Plaintiff submitted an application for a community dock and no relief is requested based on any such application. (*Id.* at 14.) Instead, Plaintiff merely seeks relief related to his own dock, which he cannot construct as a matter of law, and Plaintiff lacks standing to argue any issues based on a community dock application in which he was not involved. (*Id.*) In the alternative, Defendant again argues that any decision related to the community dock is nonreviewable by virtue of the discretion afforded to it by the Administrative Procedure Act ("APA"). (*Id.* at 14-15.) The Court will address Plaintiff's claims with regard to the community dock first and will then turn to his claims as to the individual dock.

### A. Community Dock Application Claims

As a threshold matter, the Court finds that Plaintiff lacks standing to assert any claims with regard to the community dock application which Plaintiff alleges was pending

for over five years. (Compl. ¶¶ 16-17, 38, 40.) First of all, the Court can identify nothing in the Complaint asserting that Plaintiff submitted any application to Defendant for a community dock. The relevant paragraphs of the Complaint read:

> 16. Immediately upon purchasing lot 47, Thomas J. Gast began participating in a community effort to obtain a community dock permit.
>
> 17. The initial community dock application was held by the TVA in excess of five (5) years without final action.
>
> 18. On November 5, 2007, the aging Thomas J. Gast sold lot 47 to his son, Plaintiff, Joseph M. Gast.
>
> 19. The sole reason for the sale was TVA's refusal to issue a community dock permit which made the ownership of a lake house futile venture and Thomas J. Gast no longer believed TVA would ever act upon any application.
>
> 20. The TVA, upon information and belief, did approve the initial community dock application, but did not issue a construction permit and subsequently withdrew the approval.
>
> . . .
>
> 22. Upon information and belief, the purported reason for the TVA's withdrawal of the initial community dock application approval and the moratorium is the pendency of an appeal to the Sixth Circuit Court of Appeals by the Friends of Tims Ford of the decision by this Court to dismiss a Complaint filed by the Friends of Tims Ford against TVA seeking a permanent injunction prohibiting any future dock construction on Tims Ford Reservoir.
>
> 23. Upon information and belief, TVA has never issued a community dock permit in the Zone 8, which contains Mr. Gast's property.
>
> . . .

27. Since January 2009, Mr. Gast has engaged in discussions with TVA regarding permitting of the dock or its incorporation as a community dock without success.

28. Subsequent to Mr. Gast installing his dock, TVA received an application for a community dock adjacent to Mr. Gast and has held several public and closed private meetings regarding said application.

(Compl. ¶¶ 16-20, 22-23, 27-28.)

From these portions of the Complaint, it is clear that Plaintiff's father participated in the original community dock application, and that Plaintiff was not involved with this application at all. Moreover, Defendant's claim that it is unaware of any application ever submitted by Plaintiff appears to be founded -- the only application Defendant represents it had pending is the one Plaintiff referenced in paragraph 28. This application was not submitted by Plaintiff and, in fact, it appears that Plaintiff specifically chose not to join in the application submitted by the Dock Owners Association. (Court Doc. 20-2, Glasner Letter.)[1] Plaintiff's statements in paragraph 27 also seem to make clear that Plaintiff did not submit any actual application for a community dock but instead engaged in informal discussions with Defendant about allowing his constructed dock to be used as a community dock. The Court concludes that Plaintiff himself has not submitted any community dock application.

The Court finds that Plaintiff lacks standing to assert any claims with respect to the community dock application in which his father participated. The three basic requirements

---

[1] The Court can consider this exhibit in the context of Defendant's Rule 12(b)(6) motion because it is a letter decision of a governmental agency and thus falls outside the general rule requiring conversion of a 12(b)(6) Motion with extra-pleading filings into a Motion for Summary Judgment. *See Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir.1999).

a plaintiff must demonstrate to establish constitutional standing are that (1) he suffered an "injury in fact," (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision of the court. *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002).

In addition to these constitutional standing requirements, Plaintiff in the instant case must also establish prudential standing because he is seeking judicial review of agency action. Prudential standing requires that "(1) a plaintiff must assert his own legal rights and interests, without resting the claim on the rights or interests of third parties; (2) the claim must not be a 'generalized grievance' shared by a large class of citizens; and (3) in statutory cases, the plaintiff's claim must fall within the 'zone of interests' regulated by the statute in question." *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009). "The legal injury or interest sought to be protected must relate to 'agency action,' which is defined to include 'failure to act.'" *Friends of Tims Ford v. Tennessee Valley Authority*, 585 F.3d 955, 966-67 (6th Cir. 2009).

As to constitutional standing, Plaintiff does not allege any concrete harm or injury that he suffered because of Defendant's refusal to approve a community dock application in the Complaint and, indeed, Plaintiff specifically chose not to join in a community dock application submitted by a Dock Owners Association which included lots adjacent to his.[2] Plaintiff's only "injury in fact" at this stage of the case, therefore, is the money it cost him to construct his dock and the money it cost him to remove the dock. The Court finds that there is an attenuated causal connection between this injury, however, and Defendant's

---

[2] The Court notes that, ironically, Plaintiff's refusal to join in this community dock application was part of the reason behind Defendant's denial.

actions. Defendant's action (or inaction) in failing to render a decision on the community dock application is not sufficiently causally connected to Plaintiff's choice to construct an individual dock in violation of the applicable statute and the damages which subsequently resulted.

The Court finds that the concrete injury that would result from Defendant's inaction would be the diminution in value between the land with a community dock and the land without a community dock. Certainly, Plaintiff may represent that he was induced to build the individual dock because it appeared that Defendant would never render a decision on the community dock application, but the causal link from Defendant's inaction, to Plaintiff's decision to build his own dock, to the damages that resulted from Defendant requiring Plaintiff to remove his dock, is too attenuated to allow Plaintiff to proceed with a damage claim that is somehow based on Defendant's failure to render a decision on his father's community dock application.

If the Court alternatively interprets Plaintiff's allegations in the Complaint as alleging a procedural injury, Plaintiff can only show a cognizable injury in fact by alleging that "the agency violated certain procedural rules, that these rules protect a plaintiff's concrete interests and that it is reasonably probable that the challenged action will threaten those concrete interests." 585 F.3d at 968 (citations and internal quotations omitted). There are no assertions in the Complaint with regard to the violation of the application rules *per se*, and there is no indication that the application procedure in place was protecting Plaintiff's concrete interests in the community dock. Indeed, at the time the application was submitted, and for much of the time it was pending, Plaintiff had no part in it; furthermore, it seems clear that there is no concrete interest in having a community dock in Zone 8. The

Land Management and Disposition Plan states that the area "*could* contain, depending on site restrictions, facilities associated with a community dock" and that such a community facility "*could be considered*." (Court Doc. 20-1, Land Management and Disposition Plan.)[3]

Moreover, as to the last requirement of constitutional standing, there is no indication that any relief the Court would grant with regard to that community dock application would give redress to Plaintiff's injury. If the Court ordered Defendant to render a decision on the community dock application[4] or ordered Defendant to comply with the application rules, although this would conceivably satisfy any alleged procedural injury (which is a tenuous injury at best), it would not satisfy the nature of Plaintiff's requested relief at this stage of the litigation, which is the only concrete injury he can assert--a claim for money damages he incurred from constructing and then having to remove the individual dock.

In addition to the deficiencies inherent in Plaintiff's constitutional standing, Plaintiff's prudential standing is also in question. Even assuming that Plaintiff is able to assert his own legal rights and interests with respect to an application in which he did not join, Plaintiff's claim regarding this application is clearly a "generalized grievance" shared by a group of citizens.

Under the circumstances, the Court concludes that Plaintiff lacks standing to pursue any claims with regard to the community dock application. Accordingly, Defendant's Motion to Dismiss those claims is **GRANTED** and any such claims shall be **DISMISSED**

---

[3] The Court will consider this document as a public record, which does not require the conversion of the Rule 12(b)(6) Motion into one for summary judgment. *See Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir.1999).

[4] Defendant represents that it has already made a decision on any pending applications for Plaintiff's area and Plaintiff's request for relief pursuant to this application is moot. (Def.'s Br. at 16.)

**WITH PREJUDICE**.

     **B.    Individual Dock Claims**

The Court will now address whether Plaintiff can assert any claims with regard to his own dock. The Court will extrapolate Plaintiff's Equal Protection claim from Count I of the Complaint and construe Plaintiff's statement in Count III as asserting an Equal Protection claim (and potentially an APA claim) as to his individual dock. (Compl. ¶¶ 38, 42.) The Court notes that these claims present an interplay between judicial review of an agency decision that is committed to the agency's discretion, and review of an agency decision that potentially implicates constitutional rights.

Defendant argues that Plaintiff's only option is to proceed under a "class of one" Equal Protection claim, whereby Plaintiff must show that Defendant treated him differently from others who are similarly situated and that there was no rational basis for the difference. (Def.'s Br. at 6 (quoting *Pruitt v. City of Clinton*, No. 3:08-cv-471, 2010 WL 3009513, at *7 (E.D. Tenn. July 28, 2010)). Defendant argues that this type of claim is untenable when a discretionary action is at issue because the general principle that people should be treated alike is not applicable when the basic grant of discretion may result in different treatment. (*Id.* at 7.) Defendant relies on *Engquist v. Oregon Dep't of Agric.*, 128 S. Ct. 2146, 2154 (2008) and several other cases for this proposition. (*Id.* at 7-8.) Defendant argues that it has absolute discretion with regard to permitting the construction of docks and ordering their removal, and Plaintiff's claim that other property owners were allowed to keep docks does not state an Equal Protection claim. (*Id.* at 8.) Defendant contends that, as an agency, it is in the best position to balance the allotment of resources

and choose what enforcement actions to initiate, and these decisions are not reviewable. (*Id.*) This discretion and the nonreviewable nature of Defendant's actions makes Plaintiff's allegation that Defendant is liable because of selective enforcement of regulations untenable. (*Id.* at 8-10.) Alternatively, Defendant asserts that Plaintiff did not successfully state a "class of one" claim against it because he failed to plead that Defendant's decision lacked a rational basis or that he is "similarly situated" to other individuals. (*Id.* at 10-14.)

Plaintiff argues that he has successfully stated a selective enforcement claim based on a "class of one" theory. (Court Doc. 24, Pl.'s Resp. to Def.'s Mot. to Dismiss at 2-3.) Plaintiff contends that Defendant's reliance on *Engquist* is misplaced because it was specific to public employment, and the principles outlined therein have not been broadly extended to other situations with discretionary actions. (*Id.* at 3.) Plaintiff asserts that he is asking the Court not to review Defendant's decision specifically as to the removal of his dock, but rather to review the decision in the context of other decisions Defendant has made regarding docks in the same zone. (*Id.* at 3-4.) Plaintiff further argues that he can establish that Defendant's decision is not supported by rational basis. (*Id.* at 4.) Plaintiff also contends that he has sufficiently stated that he was similarly situated to others because he needs only to show that there are other individual docks in Zone 8 and Defendant has not threatened other dock owners with removal. (*Id.* at 5.)

The Court finds that Plaintiff cannot successfully assert a "class of one" Equal Protection claim. Although *Engquist* concerns "class of one" claims in the context of public employment, the basic principle in *Engquist* is that "class of one" claims are not appropriate when the action in question is discretionary. The Supreme Court stated as follows:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist*, 553 U.S. at 603. At least one court in this Circuit has stated that the rationale in *Engquist* "*strongly* suggests that the class-of-one theory is also unavailable in other contexts where government officials must have subjective discretionary decisions, e.g., in its role as a sovereign and regulator." *Argue v. Burnett*, No. 1:08-cv-186, 2010 WL 1417633, at *11 (W.D. Mich. Apr. 1, 2010) (emphasis in original). The *Argue* court noted that several other courts had reached the same conclusion. *Id.* at *11-12. For the reasons briefly outlined below, the Court finds that the principles outlined in *Engquist* apply in the instant case, particularly in light of the United States Supreme Court decision in *Heckler v. Chaney*, 470 U.S. 821 (1985) which leads the Court to conclude that Defendant's decisions are discretionary, particularly with respect to any decision not to enforce the applicable statute.

In *Heckler*, the Supreme Court was tasked with deciding whether judicial review of an agency decision was appropriate pursuant to the APA when the decision at issue was one *not* to enforce. The *Heckler* court stated that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Id.* at 831. The Court reasoned that judicial review would

be unsuitable when an agency is afforded discretion to act because the agency is in the best position to assess its resources and prioritize accordingly. *Id.* Moreover, "when an agency refuses to act it generally does not exercise its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect." *Id.* at 832 (emphasis in original). The Court therefore concluded that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)" --the section of the APA which prohibits judicial review in situations in which "agency action is committed to agency discretion by law." *Id.; see also* 5 U.S.C. § 701(a)(2).

In the instant case, Plaintiff urges the Court to assess the enforcement action Defendant took against his individual dock in the context of other decisions Defendant allegedly made *not* to enforce the applicable statute with respect to other illegal individual docks. The statute at issue in this case, however, falls squarely under the rubric in *Heckler*--that is, although the statute does not preclude judicial review under 5 U.S.C. § 701(a)(1), it affords Defendant absolute discretion (much like the FDA enforcement statute in *Heckler*). Specifically, the statute provides, in part:

> The unified development and regulation of the Tennessee River system requires that no dam, appurtenant works, or other obstruction, affecting navigation, flood control, or public lands or reservations shall be constructed, and thereafter operated or maintained across, along, or in the said river or any of its tributaries until plans for such construction, operation, and maintenance shall have been submitted to and approved by the Board; and the construction, commencement of construction, operation, or maintenance of such structures without such approval is prohibited. When such plans shall have been approved, deviation therefrom either before or after completion of such structures is prohibited unless the

> modification of such plans has previously been submitted to and approved by the Board.
>
> . . .
>
> Such construction, commencement of construction, operation, or maintenance of any structures or parts thereof in violation of the provisions of this section ***may be prevented**, and the removal or discontinuation thereof required by the injunction or order of any district court exercising jurisdiction in any district in which such structures or parts thereof may be situated, **and the Corporation is authorized to bring appropriate proceedings to this end.***

16 U.S.C. § 831y-1 (emphasis added). This Court has previously stated that "the congressional intent [of the TVA Act was] to give TVA broad discretion in achieving its legislative objectives" based on language in the Act stating that TVA "[s]hall have such powers as may be necessary or appropriate for the exercise of the powers herein specifically conferred upon the Corporation." *Gold Point Marina, Inc. v. Tennessee Valley Authority*, 635 F. Supp. 39, 43 (E.D. Tenn. 1986); 16 U.S.C. § 831c(g). The language of the above statute makes clear that Defendant's approval of plans is a condition precedent to the construction of any structures, that construction without approval is prohibited, and that Defendant has the power to enforce this provision. The language used, however (i.e. that violations of the section "*may* be prevented" and that the Corporation is "*authorized*" to act), does not compel Defendant to take any action at all. This affords Defendant substantial discretion in commencing enforcement actions, and the statute "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830.

According to Plaintiff, Defendant chose to enforce the prohibition against him and

not other individuals, but it was within Defendant's discretion to choose not to enforce this provision against other individuals. It is clear to the Court that it cannot undertake judicial review of Defendant's choice not to enforce the provision against those individuals who allegedly constructed illegal docks due to the Supreme Court's guidance in *Heckler*. This would limit any review conducted as part of an Equal Protection inquiry to the decision made as to Plaintiff's dock alone, because Plaintiff's individual constitutional rights would still be at issue even if the Court could not judicially review all of Defendant's decisions under the APA.

Because the constitutional rights of the other citizens are not at issue and the Court cannot review Defendant's decisions not to enforce pursuant to the APA, however, the Court cannot undertake an Equal Protection review that includes Defendant's decisions not to enforce the provision as to these other illegally constructed docks. Moreover, the Court finds that even if it could undertake such a review, it would likely be futile due to the very nature of the afforded discretion and unequal treatment that could result from this discretion. Additionally, from the facts before the Court, there would be little reason to review the singular enforcement decision as to Plaintiff as part of an Equal Protection inquiry because it does not appear to be in dispute that Plaintiff's dock was constructed in violation of 16 U.S.C. § 831y-1 and Defendant had discretion to enforce that provision.[5]

Although the Court finds that the *Engquist* rationale and *Heckler* apply to the instant case to render Plaintiff's Equal Protection or APA claims as to the individual dock

---

[5] Because the Court cannot review Defendant's decision as to the other docks pursuant to the APA, the Court cannot determine whether such decisions were arbitrary or capricious or an abuse of discretion under 5 U.S.C. § 706. The standard outlined in § 706 contemplates that the Court has before it agency decisions that are properly reviewable under the APA.

untenable, the Court also finds merit in Defendant's alternative argument that Plaintiff has not established the two requirements of a "class of one" Equal Protection claim. Essentially, Plaintiff has not provided the Court with any facts that might establish that any selective enforcement by Defendant lacks rational basis. Indeed, Plaintiff's burden to establish that Defendant's actions pursuant to the statute lack rational basis is a heavy one, such that Plaintiff must negate "all possible rational justifications" for Defendant's actions. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 536 (6th Cir. 2007). Defendant's actions are, until then, presumptively valid, and Defendant bears no burden to provide evidence to support its decisions. *See Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Michigan*, 470 F.3d 286, 298 (6th Cir. 2006).

Defendant has, however, nonetheless advanced two potential rational bases for its actions – one, that it has to allocate its limited resources wisely, such that it must make enforcement decisions selectively; and two, the uniqueness of the land could rationally support the removal of Plaintiff's dock rather than removal of other docks due to the land's location, size, or other features. (Def.'s Br. at 12-13.) Plaintiff claims that these rationalizations (and the cases cited in support) lack merit and are conclusory assertions, but Plaintiff does not make any argument to support a contention that Defendant's actions lack rational basis. As the Court has already stated, Plaintiff bears the heavy burden on this issue, and nothing in the Complaint or Plaintiff's Response to Defendant's Motion come close to meeting this burden.

Therefore, even if the Court accepted that Plaintiff has successfully alleged that others are similarly situated to him, Plaintiff's Equal Protection claim still fails as a matter of law because he has not met his burden to establish that Defendant's actions lack

rational basis. Accordingly, Defendant's Motion to Dismiss Plaintiff's Equal Protection claim, or any other claim asserted as to Plaintiff's individual dock, is **GRANTED** and any such claims are **DISMISSED WITH PREJUDICE**.

IV. **CONCLUSION**

For the reasons outlined above, Defendant's Motion to Dismiss [Court Doc. 19] is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

A separate Judgment will enter.

**SO ORDERED** this 10th day of March, 2011.

                                                 /s/Harry S. Mattice, Jr.
                                                 HARRY S. MATTICE, JR.
                                                 UNITED STATES DISTRICT JUDGE